```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF NEW JERSEY
```

|  |  |  |
|---|---|---|
| AETNA HEALTH INC., et al., | : :  | Civil Action No. |
| Plaintiffs, | : : | 10-5216-NLH-JS |
| v. | : : | **OPINION** |
| HEALTH GOALS CHIROPRACTIC CENTER, INC., et al., | : : : |  |
| Defendants. | : : |  |

**APPEARANCES**:

Edward S. Wardell
Wardell, Craig, Annin & Baxter, LLP
41 Grove St.
Haddonfield, NJ 08033
*Attorney for Plaintiffs Aetna Health Inc. and Aetna Life Insurance Company*

John W. Leardi
Paul D. Werner
Buttaci & Leardi, LLC
103 Carnegie Center
Suite 101
Princeton, NJ 08540
*Attorneys for Defendants Health Goals Chiropractic Center, Inc. and Kathleen Baumgardner, D.C.*

**HILLMAN, District Judge**

    This matter comes before the Court on the Motion of Plaintiffs Aetna Health Inc. and Aetna Life Insurance Company to Remand this matter to the Superior Court of New Jersey, Law Division, Camden County. Defendants, Health Goals Chiropractic Center, Inc. and Kathleen Baumgardner, D.C., contend that removal is appropriate because Plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act (hereinafter

"ERISA"). Plaintiffs dispute Defendants' assertion. For the reasons set forth below, Plaintiffs' Motion to Remand will be granted while their companion application for costs and fees will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant Kathleen Baumgardner, D.C. (hereinafter "Dr. Baumgardner") is a licensed chiropractor and officer of Defendant Health Goals Chiropractic Center, Inc. (collectively "Defendants"). Plaintiffs Aetna Heath Inc. and Aetna Life Insurance Co. (collectively "Plaintiffs") are health care benefits and health insurance providers. At all relevant times, Dr. Baumgardner was an in-network healthcare provider with Plaintiffs. As an in-network provider, she was obligated to accept discounted rates when she provided professional chiropractic services to individuals covered by Plaintiffs' insurance plans. Under the terms of the in-network contract, Plaintiffs were required to pay Dr. Baumgardner for all services deemed medically necessary or otherwise covered by the plans.

Plaintiffs' Complaint alleges that beginning in approximately 2001, Defendants "entered into a scheme to defraud Plaintiffs and submitted insurance claims and statements for services which contained knowingly false and misleading statements, misrepresented the services performed and failed to disclose information which affected their right to payment." Doc.

2

1-1, Compl. ¶ 12.  In furtherance of their scheme, Defendants expressly represented to Plaintiffs "that they had performed the services billed; that they were licensed to perform the services rendered; that the information and statements contained in the insurance claims submitted were true, correct and complete; and that the amounts billed were actually incurred by the patient." Id. at ¶ 14.

In November 2005, Plaintiffs requested that Defendants submit medical records to substantiate their billing practices. Approximately one year later, Plaintiffs received the records. In the course of examining the records, Plaintiffs discovered Defendants:

> a. Submitted insurance claims and received payment for chiropractic services that they did not provide . . .
> b. Submitted insurance claims which misrepresented the chiropractic services and received payment as a result of those misrepresentations
> c. Submitted insurance claims and received payment for the treatment of conditions and provision of services beyond the scope of their license . . .
> d. Submitted insurance claims which "upcoded" the services rendered for office visits and chiropractic manipulations . . .
> e. Submitted insurance claims and received payment for services which were ineligible for reimbursement under the laws which govern the practice of chiropractic.

Id. at ¶ 31.  According to Plaintiffs, the submission of claims for excessive, phantom and duplicate charges violated regulations that govern chiropractic practice.  As a result of this alleged fraud, Plaintiffs paid Defendants $1,078,079.42 through January 2007.

This action was initially commenced on August 17, 2010, in the Superior Court of New Jersey, Law Division, Camden County. Plaintiffs' Complaint relies exclusively on state law and alleges that Defendants committed common law fraud, statutory fraud and negligent misrepresentation of their services when they submitted their claims to Plaintiffs.  On October 8, 2010, Defendants removed the Complaint to this Court, alleging Plaintiffs' state claims were entirely preempted by ERISA.  Plaintiffs, on November 2, 2010, filed a Motion to Remand.  Defendants oppose the Motion.

**II.  ANALYSIS**

   **A. Removal**

Removal of a civil case from state to federal court is governed by 28 U.S.C. § 1441.  The defendant seeking removal bears the burden of establishing federal jurisdiction, and "faces an uphill battle as section 1441 must be strictly construed against removal." Horizon Blue Cross Blue Shield of New Jersey v. East Brunswick Surgery Ctr., 623 F. Supp.2d 568, 572 (D.N.J. 2009); *see also* Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004) ("28 U.S.C. § 1441 is to be strictly construed against removal").

Removal is only proper if the plaintiff's original cause of action is "one 'arising under' federal law." Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388

F.3d 393, 398 (3d Cir. 2004) (citing 28 U.S.C. §§ 1331, 1441(a)). The well-pleaded complaint rule regulates a court's determination of whether a cause of action arises under federal law. *See* Caterpillar Inc. v. Williams*,* 482 U.S. 386, 392 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint").  This "rule makes the plaintiff the master of the claim", and he "may avoid federal jurisdiction by exclusive reliance on state law." Id.  Under the well-pleaded complaint rule, removal is only appropriate "(1) when 'it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims' or (2) when it appears that plaintiff's claim 'is "really" one of federal law.'" Goepel v. Nat'l Postal Mail Handlers Union, a Div. of LIUNA, 36 F.3d 306, 310 (3d Cir. 1994) (quoting in part Franchise Tax Bd. of the State of California v. Constr. Laborers Vacation Trust for Southern California, 463 U.S. 1, 13 (1983)); *see* Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (This "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience,

solicitude, and hope of uniformity that a federal forum offers on federal issues"). Thus, "[a] federal defense to a plaintiff's state law cause of action ordinarily does not appear on the face of the well-pleaded complaint, and, therefore, usually is insufficient to warrant removal to federal court." Dukes v. United States Healthcare, Inc., 57 F.3d 350, 353 (3d Cir. 1995).

"The Supreme Court has recognized an exception to the well-pleaded complaint rule - the 'complete preemption' exception - under which 'Congress may so completely pre-empt a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character." Dukes, 57 F.3d at 354 (quoting in part Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)). Section 502(a) of ERISA[1] "is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."[2] Pascack Valley Hosp., Inc., 388 F.3d at 399-400 (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209

---

[1] ERISA is a federal statute that "protect[s] . . . the interests of participants in employee benefit plans and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal courts." Aetna Health v. Davila, 542 U.S. 200, 208 (2004) (quoting in part 29 U.S.C. § 1001(b)) (internal quotations omitted).

[2] Under ERISA two types of preemption exist, complete and express. This case only involves complete preemption. Therefore, the Court will not discuss express preemption.

(2004))(internal quotations omitted); *see* Dukes, 57 F.3d at 354 ("The Supreme Court has determined that Congress intended the complete-preemption doctrine to apply to state law causes of action which fit within the scope of ERISA's civil-enforcement provisions").  "As a result, state law causes of action that are within the scope of . . . § 502(a) are completely pre-empted and therefore removable to federal court." Pascack Valley Hosp., Inc., 388 F.3d at 400 (internal quotations omitted).

Section 502(a), ERISA's civil enforcement provision, is designed to "accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." Davila, 542 U.S. at 208.  Consequently, a state law that either supplements, replicates or duplicates the ERISA enforcement remedy is preempted. Id. at 209.  In Pascack, the Third Circuit promulgated a two part test to determine whether § 502 of ERISA completely preempts a state law claim.  Under this test "a defendant seeking removal must prove that: (1) the plaintiff could have originally brought the claim under [§] 502 and (2) no other legal duty supports the claim." Aetna Health Inc. v. Srinivasan, No. 10-4858, 2010 WL 5392697, at * 2 (D.N.J. Dec. 22, 2010)(internal quotations, citations omitted); *see* Pascack Valley Hosp., Inc., 388 F.3d at 400.

### 1. Plaintiffs Could Not Have Originally Brought Their Claim Under § 502.

Section 502(a)(3) permits a civil action to be brought "by a

participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  In the present matter, Plaintiffs are not participants or beneficiaries.  Therefore, if § 502 is applicable, the Court must conclude that Plaintiffs are fiduciaries.  ERISA provides that a fiduciary:

> (i) [] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [] has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

The Third Circuit recognized that "an insurance company with discretionary responsibility over the award of benefits under an employee benefits plan acts as a fiduciary under ERISA." East Brunswick Surgery Ctr., 623 F. Supp.2d at 575 (quoting Wachtel v. Health Net, Inc., 482 F.3d 225, 229-30 (3d Cir. 2007)).  In its role as fiduciary, the insurance company may "obtain appropriate equitable relief [under § 502] to enforce any provisions . . . of the terms of the plan." Metro. Life Ins. Co. v. Price, 501 F.3d

271, 276 (3d Cir. 2007) (quoting 29 U.S.C. § 1132(a)(3)(B)(ii)). Thus, a claim is actionable under § 502 only if it is brought to enforce the terms of a plan. *See* East Brunswick Surgery Ctr., 623 F. Supp.2d at 575 ("The inquiry in the present case is more focused: is Plaintiff acting as a fiduciary in proceeding with its claims, or stated another way, does Plaintiff assert its claims . . . on behalf of the plan beneficiaries"). A plaintiff that does not seek to enforce the terms of a plan is not a fiduciary, and its claim cannot proceed under § 502. Alternatively, if the plaintiff initiates suit to enforce the terms of a plan, it is a fiduciary and its claim is actionable under § 502. Similarly, a plaintiff may act as a fiduciary in some matters, but not in others. The mere fact that a plaintiff is sometimes a fiduciary does not automatically require it to always act as a fiduciary. Srinivasan, 2010 WL 5392697, at * 3.

For a court to determine if a claim was brought to enforce the terms of a plan, it is required to examine whether the plaintiff's claim was brought (1) on behalf of itself or (2) on behalf of its beneficiaries. A plaintiff that brings a claim on behalf of itself does not seek to enforce the terms of a plan and, therefore, does not act as a fiduciary. *See* East Brunswick Surgery Ctr., 623 F. Supp.2d at 577 ("As a purely factual matter, there is an appreciable difference between a health provider *seeking* reimbursement of behalf of plan participants based on

9

ERISA benefits plans as opposed to a health care plan, in sole furtherance of its own business interests")(emphasis in original). A plaintiff brings a claim on its own behalf when the plaintiff, in pursuing its claim, does not "seek to deny or control benefits", but rather acts to protect its own business interests. Id. Consequently, courts must carefully examine the reasons that prompted a plaintiff's lawsuit.

Defendants contend Plaintiffs' decision to pursue a lawsuit was the result of (1) a retroactive review of the services Defendants performed and (2) an analysis of whether those services were authorized by the terms of the health care plans. According to Defendants, these actions constituted enforcement of the terms of the plan. As such, Defendants conclude, Plaintiffs acted as a fiduciary and their state law claims should be preempted.

In support of this argument, Defendants primarily rely on Blue Cross & Blue Shield of Rhode Island v. Korsen, No. 09-317L, ____ F. Supp.2d ____, 2010 WL 4230811 (D.R.I. Oct. 27, 2010).[3]

---

[3] Defendants additionally rely on Fritzky v. Aetna Health, Inc., No. 08-5673, 2009 WL 2905374 (D.N.J. Sept. 4, 2009). This case, however, is not persuasive. In Fritzky, a beneficiary of an insurance plan initiated the lawsuit, not the insurance company. This factual distinction is critical. The test a court utilizes to determine whether ERISA preempts a plaintiff's complaint differs based upon whether the lawsuit was initiated by a beneficiary or fiduciary. *Compare* Fritzky v. Aetna Health, Inc., No. 08-5673, 2009 WL 2905374, at * 4 (D.N.J. Sept. 4, 2009) ("To determine whether a claim alleging medical negligence is preempted by ERISA § 502(a), a court must distinguish between

The Court, however, does not find this case persuasive. In Korsen, the district court concluded that the insurance company acted as a fiduciary because it "defines permissible, compensable medical services; it determines which services are medically necessary for its subscribers; and it audits medical providers to determine if their services are medically necessary and generally accepted in the medical community." Blue Cross & Blue Shield of Rhode Island v. Korsen, No. 09-317L, ____ F. Supp.2d ____, 2010 WL 4230811, at * 4 (D.R.I. Oct. 27, 2010). However, beyond this characterization of the duties of an insurance company, the court did not make any determination as to why the insurance company initiated the lawsuit or whether or not the state claims were brought to enforce the terms of a plan. The court seemingly assumed that because insurance companies generally act as fiduciaries, it acted as a fiduciary and initiated suit on behalf of its plan members. We do not believe that the latter always follows from the former. *See* Srinivasan, 2010 WL 5392697, at * 3 ("The mere fact that Aetna might act as an ERISA fiduciary in

---

decisions related to the administration of or eligibility for benefits, which turn on the plan's coverage of a particular condition, and decisions related to medical treatment, which relate to choices made in diagnosing and treating a condition") (internal quotations omitted), *with* East Brunswick Surgery Ctr., 623 F. Supp.2d at 575 ("The inquiry in the present case is more focused: is Plaintiff acting as a fiduciary in proceeding with its claims, or stated another way, does Plaintiff assert its claims for tortious interference and insurance fraud on behalf of the plan beneficiaries").

11

other circumstances does not alter its role in bringing the instant action"); *see also* East Brunswick Surgery Ctr., 623 F. Supp.2d at 578 (noting that "[p]laintiff's state claims are not predicated on an alleged failure to provide full benefits to a plan participant", but "emanate from Defendants' alleged comprehensive scheme" to defraud plaintiff).

In the present matter, Plaintiffs' state claims are based on allegations of fraud.  They specifically contend Defendants submitted claims which were knowingly false, misleading and mis-representative of the services Defendants performed.  Plaintiffs' claims were not brought on behalf of Defendants' patients, the beneficiaries the plan.  Rather, Plaintiffs asserted the claims in their own capacity and on behalf of themselves and their business interests.[4]  Plaintiffs do not seek to deny or control benefits as a fiduciary, nor are any of their claims predicated on Defendants' failure to provide proper benefits to a plan beneficiary.  Instead, the claims emulated from Defendants' alleged scheme to defraud Plaintiffs.  It was Plaintiffs, not the plan beneficiaries, that were the victims of Defendants' alleged

---

[4] Although Plaintiffs may have reviewed the plans to determine whether they should file suit, that fact is not dispositive. *See* East Brunswick Surgery Ctr., 623 F. Supp.2d at 573-74 ("[T]he bare fact that a plan's terms may be consulted in the course of litigating a state-law claim in insufficient to justify removal") (internal quotations omitted).  Any review of the plan does not negate the reasons why Plaintiffs filed suit, which were to recover damages because of Defendants' alleged fraudulent misconduct.

fraudulent misdeeds.  Consequently, Plaintiffs' state claims do not seek either the recovery of benefits, under the terms of the plan, or the enforcement of the plan.  Plaintiffs, as the recipient of the alleged fraud, were the parties damaged and are entitled to redress. *See* East Brunswick Surgery Ctr., 623 F. Supp.2d at 577 ("[T]he Court is aware of, no case which has held that a health care plan, similarly situated to Plaintiff, which seeks damages from the overpayment of benefits to a heath care provider arising from statutory and common law fraud claims, is acting in a away that enforces the rights of a patient-assignor so as to subject those claims to a ERISA's enforcement mechanisms").  The Court, therefore, concludes Plaintiffs are entitled to remand because they could not have originally brought their claims under § 502.

> **2. An Independent Legal Duty, Other Than ERISA, Exists Governing the Relationship Between Plaintiffs and Defendants.**

Even if the Court determined, for purposes of this action, that Plaintiffs are a fiduciary within the meaning of § 502(a)(3) and, therefore, could initiate their claim under § 502(a), we conclude, in the alternative, that Defendants also failed to prove that no other legal duty supports Plaintiffs' claims.  To establish that no other separate legal duty supports a plaintiff's state claims, a defendant must demonstrate that the state claims "are derived entirely from the particular rights and

obligations established" by the plans. East Brunswick Surgery Ctr., 623 F. Supp.2d at 578. In other words, "ERISA benefit plans and obligations [must] underscore [a] [p]laintiff's state law claims." Id. at 576.

Defendants attempt to frame Plaintiffs' state claims as a mere billing dispute involving overpayment of benefits, and, therefore, governed by ERISA. They specifically contend that "[t]he central question for the court . . . will be whether or not the services provided to [Plaintiffs'] insureds were in fact covered services as defined by the . . . plans." Doc. 7-1, Def. Br. 19. In support of their argument, Defendants erroneously conclude that if the Court consults the ERISA plan, the state claims arise from the duties imposed by the plan. This is not accurate. ERISA does not prohibit a court from consulting the plan during the litigation of Plaintiffs' state law claims. East Brunswick Surgery Ctr., 623 F. Supp.2d at 573-74. Although the plans at issue are governed by ERISA, Defendants must prove that Plaintiffs' "claims are derived entirely from the particular rights and obligations established by" the plans. Id. at 578 (emphasis added). This Defendants cannot do. Plaintiffs' state claims are derived from New Jersey's insurance fraud statute and its common law counterparts. The ultimate resolution of these claims does not require an interpretation or analysis of the terms of the plans. Defendants' conduct, not the terms of the

14

ERISA plans, is the focal point of Plaintiffs' claims. Therefore, a cursory review or consultation of the plans is sufficient to determine whether Defendants' insurance claims were fraudulent.  For example, Plaintiffs allege Defendants were not licensed to perform services for which they received payment and that Defendants charged for services they did not perform.  Defendants were either licensed or not; they either performed the services or not.  The specific terms of the plans are irrelevant in resolving this inquiry.

    Absent the provisions of the plan, an independent legal duty existed between Plaintiffs and Defendants.  This duty, imposed by New Jersey's insurance fraud statute and its common law counterparts, prohibited Defendants from committing fraud or submitting fraudulent claims. Srinivasan, 2010 WL 5392697, at * 4; see Massachusetts Mutual Life Ins. Co. v. Marinari, No. 07-2473, 2009 WL 5171862, at * 6-9 (D.N.J. Dec. 29, 2009) (albeit applying 514(a), complete preemption, determining that ERISA does not preempt plaintiff's state claim under New Jersey Fraud Act alleging defendant fraudulently obtained disability benefits when he submitted fraudulent documentation of a disability).  These laws represent New Jersey's efforts to prevent and deter insurance fraud.  Defendants' obligation to obey them was not dependent on ERISA plans, but rather arose separately and independently from any contractual duties prescribed by ERISA.

15

As discussed in the preceding paragraph, the adjudication of Plaintiffs' state claims appears to require minimal or cursory consultation of the plans and factual rather than legal points of contention. The Court concludes, therefore, that Plaintiffs are entitled to remand because Defendants failed to prove that no other legal duty supports Plaintiffs' state claims.

### B. Attorneys' Fees

In addition to moving for remand, Plaintiffs also seek attorneys' fees associated with the removal of this matter. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "The standard for awarding fees should turn on the reasonableness of removal. Absent unusual circumstances, courts may award attorneys's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Srinivasan, 2010 WL 5392697, at * 5 (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)).

We exercise our discretion to deny attorneys' fees in this case. Defendants based their removal of Plaintiffs' Complaint on ERISA preemption, a complex area of the law. See Kollman v. Hewitt Assocs., LLC, 487 F.3d 139, 147 (3d Cir. 2007) ("It is no secret to judges and lawyers that the courts have struggled with

16

the scope of ERISA preemption"). Defendants' arguments in support of removal were well-reasoned, novel and thoroughly researched. The Court concludes Defendants "had a colorable basis for removal" and will therefore not award attorneys' fees. <u>Srinivasan</u>, 2010 WL 5392697, at * 5.

    An appropriate Order will be entered.


Date: <u>April 7, 2011</u>            <u>s/ Noel L. Hillman</u>
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.